UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

JEAN OLIVER,

                 Plaintiff,

       v.

NEW YORK STATE POLICE, *et al*.,

              Defendants.

_____

**DECISION AND ORDER**

1:17-CV-01157 EAW
1:18-CV-00732 EAW

## INTRODUCTION

*Pro se* plaintiff Jean Oliver ("Plaintiff") is a former employee of the New York State Police (the "NYSP"). Plaintiff has filed numerous actions related to her former employment in this Court, the United States District Court for the Northern District of New York, and the New York State courts. Two such actions (Civil Action No. 1:17-CV-01157 (hereinafter the "2017 Action") and Civil Action No. 1:18-CV-00732 (hereinafter the "2018 Action")) are currently pending in this Court. The NYSP is a defendant in both the 2017 and 2018 Actions. The other defendants in the 2017 Action (referred to collectively with the NYSP as the "2017 Defendants") are eight high-level employees of the NYSP, sued in their individual and official capacities. (2017 Action, Dkt. 1 at ¶¶ 8-15). The other defendants in the 2018 Action (referred to collectively with the NYSP as the "2018 Defendants") are the New York State Attorney General (the "NYAG"), the New York State Public Employment Relations Board (the "PERB"), and the New York State Governor's Office of Employee Relations (the "GOEC"). (2018 Action, Dkt. 1 at 1).

- 1 -

Currently before the Court are three motions filed in the 2017 Action and four motions filed in the 2018 Action. In particular, in the 2017 Action, Plaintiff has filed a motion for the costs of service (2017 Action, Dkt. 2) and a motion for transfer to the Northern District of New York (*id.*, Dkt. 16), while the 2017 Defendants have moved for dismissal and for a more definite statement (*id.*, Dkt. 6). In the 2018 Action, the 2018 Defendants have moved for dismissal and for a more definite statement (2018 Action, Dkt. 2), and Plaintiff has filed a cross-motion to compel (*id.*, Dkt. 10), a motion for a conference (*id.*, Dkt. 12), and a motion for transfer to the Northern District of New York (*id.*, Dkt. 13). For the reasons discussed below, these motions are resolved as follows: (1) Plaintiff's motion for costs (2017 Action, Dkt. 2) is denied; (2) the 2017 Defendants' motion to dismiss or for a more definite statement (*id.*, Dkt. 6) is denied as to the request for dismissal but granted as to the request for a more definite statement; (3) the 2018 Defendants' motion to dismiss or for a more definite statement (2018 Action, Dkt. 2) is granted as to the request for dismissal and denied as moot as to the request for a more definite statement; (4) Plaintiff's cross-motion to compel the 2018 Defendants to answer her Complaint (*id.*, Dkt. 10) is denied; (5) Plaintiff's motion to transfer the 2017 Action to the Northern District of New York (2017 action, Dkt. 16) is granted; (6) Plaintiff's motion to transfer the 2018 Action to the Northern District of New York (2018 Action, Dkt. 13) is denied as moot; and (7) Plaintiff's letter motion for a conference in the 2018 Action (*id.*, Dkt. 12) is denied as moot.

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff began working for the NYSP in 1997, and originally spent 7 years as a member of the road patrol. (2017 Action, Dkt. 1 at ¶¶ 26-27).[1] In 2005, Plaintiff was promoted to the rank of investigator and assigned to the Batavia Downs Video Lottery Unit. (*Id.* at ¶ 28). Plaintiff remained with the Batavia Downs Video Lottery Unit until 2008, when she was reassigned to the Community Narcotics Enforcement Team West ("CNET West"). (*Id.* at ¶¶ 17, 28).

While she was assigned to CNET West, Plaintiff's supervisor was non-defendant Paul Kelly. (*Id.* at ¶¶ 16, 29). On October 26, 2013, Plaintiff filed an informal complaint of gender discrimination, harassment, and misconduct by Kelly with the NYSP Office of Human Resources. (*Id.* at ¶ 16). Plaintiff claims that she was retaliated against as a result of filing this complaint. (*Id.* at ¶ 17). Plaintiff filed a formal charge of harassment, discrimination, and retaliation with the United States Equal Employment Opportunity Commission (the "EEOC") on September 25, 2014, which was also simultaneously filed with the New York State Division of Human Rights (the "NYSDHR"). (*Id.* at ¶ 19). On January 29, 2015, the EEOC issued a determination finding probable cause that gender discrimination and retaliation had occurred. (*Id.*). The EEOC further notified Plaintiff of her right to sue. (*Id.*).

On April 14, 2015, Plaintiff filed a *pro se* complaint in the Northern District of New York related to the alleged discrimination and retaliation. *Oliver v. New York State Police*,

---

[1] As is required at this stage of the proceedings, the Court has treated Plaintiff's factual allegations as true.

Civil Action No. 1:15-cv-00444, Dkt. 1 (N.D.N.Y. April 14, 2015) (hereinafter the "NDNY Action"). The NDNY Action remains pending.

Plaintiff filed a second EEOC charge on May 20, 2015, alleging continued retaliation. (2017 Action, Dkt. 1 at ¶ 21). On May 22, 2015, the EEOC issued a right to sue letter and a letter informing Plaintiff that her complaints were subsumed by her initial EEOC charge and addressed in the NDNY Action. (*Id.*).

On July 16, 2015, Plaintiff dual-filed a complaint with the EEOC and the NYSDHR alleging gender discrimination, harassment, disability discrimination, military status discrimination[2], and retaliation. (*Id.* at ¶ 22). The NYSDHR dismissed the complaint for administrative convenience on September 23, 2015. (*Id.*). On October 23, 2015, the EEOC issued a right to sue letter. (*Id.*).

Temporarily represented by counsel, Plaintiff commenced a lawsuit in this Court on January 5, 2016. *Oliver v. New York State Police, et al.*, Civil Action No. 1:16-cv-00011 EAW, Dkt. 1 (W.D.N.Y. January 5, 2016) (hereinafter the "2016 Action"). The 2016 Action was voluntarily dismissed by Plaintiff on December 8, 2016. *Id.*, Dkt. 15.

On September 9, 2017, Plaintiff filed a complaint with the NYSDHR alleging retaliation. (2017 Action, Dkt. 1 at ¶ 25). Plaintiff alleges that the NYSDHR refused to process this complaint. (*Id.*).

The 2017 Action was commenced on November 9, 2017. (*Id.*, Dkt. 1). In the 2017 Action, Plaintiff, acting *pro se*, alleges that the 2017 Defendants improperly handled the

---

[2] Plaintiff is an officer in the United States Army Reserves. (2017 Action, Dkt. 1 at ¶ 27).

investigations into her discrimination and retaliation complaints, wrongfully terminated Plaintiff, falsified submissions in a proceeding Plaintiff commenced in New York State Court, and otherwise retaliated against Plaintiff. (*Id.* at ¶¶ 30-58). Plaintiff asserts claims of gender discrimination, retaliation, conspiracy to violate her civil rights, military status discrimination, and violations of the New York Civil Service and Labor Laws. (*Id.* at ¶¶ 59-79).

On January 5, 2018, Plaintiff filed a motion for the costs of service in the 2017 Action. (*Id.*, Dkt. 2). In particular, Plaintiff contends that pursuant to Federal Rule of Civil Procedure 4(d), she requested that the 2017 Defendants waive service of a summons and they failed to do so, entitling Plaintiff to recover the expenses incurred in making such service. (2017 Action, Dkt. 2 at 1-2). The 2017 Defendants filed a response to Plaintiff's motion for costs on January 17, 2018 (*id.*, Dkt. 8), and Plaintiff filed a reply on January 22, 2018 (*id*, Dkt. 11).

On January 10, 2018, the 2017 Defendants filed a motion to dismiss Plaintiff's Complaint for lack of personal jurisdiction, insufficient process, and insufficient service of process, or, in the alternative, for a more definite statement. (*Id.*, Dkt. 6). In particular, the 2017 Defendants contend that the summonses served upon them in this case are defective, and that the Court therefore lacks personal jurisdiction over them. (*Id.*, Dkt. 6-1 at 6-8). The 2017 Defendants further argue that Plaintiff's Complaint is "an improper shotgun pleading" because it fails to link any specific factual allegations to her asserted causes of action, and that a more definite statement of Plaintiff's claims is therefore required. (*Id.* at 8-10). Plaintiff filed a response in opposition to the 2017 Defendants' motion to dismiss

on January 19, 2018 (2017 Action, Dkt. 9), and the 2017 Defendants filed a reply on February 14, 2018 (*id.*, Dkt. 13).

Plaintiff, acting *pro se*, commenced the 2018 Action on July 2, 2018. (2018 Action, Dkt. 1). Plaintiff alleges that the 2018 Defendants violated the New York Civil Service Law at various administrative hearings and failed to investigate her claims of discrimination and retaliation. (*Id.* at ¶¶ 8-9, 20-25). Plaintiff further alleges that the 2018 Defendants submitted false documentation and engaged in litigation misconduct in an action her former counsel commenced in New York State Court. (*Id.* at ¶¶ 10-19). Based on these allegations, Plaintiff purports to assert claims of gender discrimination, retaliation, conspiracy to violate Plaintiff's civil rights, and violations of state law. (*Id.* at ¶¶ 26-45).

The 2018 Defendants moved for dismissal or for a more definite statement on July 23, 2018. (2018 Action, Dkt. 2). In particular, the 2018 Defendants argue that Plaintiff's claims against them are barred by the doctrine of sovereign immunity, are improperly duplicative of her prior lawsuits, and are time barred. (*Id.*, Dkt. 2-1 at 1-2). The 2018 Defendants further argue in the alternative that Plaintiff's Complaint is "an improper shotgun pleading" and seek a more definite statement. (*Id.* at 2). Plaintiff filed a response and a "cross-motion to compel Defendants to answer the charges" on August 20, 2018. (2018 Action, Dkt. 10). The 2018 Defendants filed a reply on September 4, 2018. (*Id.*, Dkt. 11).

On September 5, 2018, Plaintiff filed a letter motion in the 2018 Action requesting that the Court schedule a conference to "address the ongoing violations of [her] 14th Amendment rights to due process and equal protection under the law and the retaliation

[she] continue[s] to be subjected to for exercising [her] rights under Title VII." (*Id.*, Dkt. 12 at 6). The next day, Plaintiff filed a motion for transfer to the Northern District of New York in both the 2017 and 2018 Actions. (2017 Action, Dkt. 16; 2018 Action, Dkt. 13). The 2017 and 2018 Defendants filed responses on September 28, 2018, indicating that they take no position on Plaintiff's request for transfer, but requesting that the Court resolve the pending motions to dismiss prior to deciding the venue issue. (2017 Action, Dkt.18; 2018 Action, Dkt. 15).[3]

## DISCUSSION

### I. Plaintiff's Motion for Costs

The Court first considers Plaintiff's motion for the costs of service under Rule 4(d).

Under Rule 4(d):

> An individual, corporation, or association that is subject to service under Rule 4(e), (f), or (h) has a duty to avoid unnecessary expenses of serving the summons. The plaintiff may notify such a defendant that an action has been commenced and request that the defendant waive service of a summons.

Fed. R. Civ. P. 4(d)(1). In order to exercise the right to request a waiver, a plaintiff must:

> serve appropriate notice upon the defendant that a lawsuit has been commenced against them and further request such defendant to waive service of process for the very purpose of controlling costs and minimizing the often arduous and inconvenient task of effectuating personal service. If the plaintiff complies with all of the notice requirements set forth in Rule 4(d), which includes attaching a copy of the complaint, then the defendant is compelled to execute the waiver of service or be confronted with bearing the cost of the personal service upon him.

---

[3] On September 6, 2018, Plaintiff also filed a letter motion in the NDNY Action, asking that the 2017 Action and 2018 Action be transferred to that court. NDNY Action, Dkt. 123. United States Magistrate Judge Daniel J. Stewart denied the request on September 25, 2018, explaining that "any such request for a change of venue must be made in the District Court where the case is presently pending." *Id.*, Dkt. 132.

*Chapman v. New York State Div. for Youth*, 227 F.R.D. 175, 179 (N.D.N.Y. 2005). Importantly, "[s]ervice upon governmental agencies and their employees is governed by Rule 4(j)," not Rule 4(e), (f), or (h), and "[f]or public policy reasons, neither governmental agencies nor their employees or officials are obligated to comply with a request for waiver nor will they be confronted with bearing the costs of the service of process." *Chapman*, 227 F.R.D. at 179; *see also Rashada v. City of Buffalo*, No. 11CV873A, 2013 WL 474751, at *3 (W.D.N.Y. Feb. 6, 2013) ("[C]ourts have held that police officers or corrections officers, being sued in their official capacity, are not subject to the waiver and cost provisions of Rule 4(d), because they are construed to have been served under Rule 4(j)." (collecting cases)); *Cupe v. Lantz*, 470 F. Supp. 2d 136, 138 (D. Conn. 2007) ("Rule 4(d)'s waiver of service provision [is] inapplicable to states and their employees sued in their official capacities.").

Here, the 2017 Defendants consist of the NYSP and eight New York State employees sued in their individual and official capacities. (2017 Action, Dkt. 1 at 1). Because all of the 2017 Defendants are either agencies of New York State or state employees sued in their official capacities, they are not subject to Rule 4(d)'s waiver of service provision. *See Chapman*, 227 F.R.D. at 179; *see also Rashada*, 2013 WL 474751, at *3 (denying request for costs under Rule 4(d) where claims appeared to be asserted against defendants in both their individual and official capacities). Plaintiff's motion for the costs of service is therefore denied.

## II.  Motion to Dismiss the 2017 Action

The 2017 Defendants seek dismissal of Plaintiff's claims against them on the basis of lack of personal jurisdiction, insufficient process, and insufficient service of process. (2017 Action, Dkt. 6). In particular, the 2017 Defendants argue that the summonses served upon them fail to comport with the requirements of Rule 4(a). (*Id.*, Dkt. 6-1 at 6-8). On these grounds, Defendants seek dismissal of Plaintiff's Complaint in the 2017 Action pursuant to Federal Rules of Civil Procedure 12(b)(2), (4), and (5). (*Id.* at 5).

### A.  Legal Standard

Rule 4(c) provides that a "summons must be served with a copy of the complaint." Fed. R. Civ. P. 4(c)(1).  Pursuant to Rule 4(a), a summons must:

> (A) name the court and the parties; (B) be directed to the defendant; (C) state the name and address of the plaintiff's attorney or—if unrepresented—of the plaintiff; (D) state the time within which the defendant must appear and defend; (E) notify the defendant that a failure to appear and defend will result in a default judgment against the defendant for the relief demanded in the complaint; (F) be signed by the clerk; and (G) bear the court's seal.

Fed. R. Civ. P. 4(a)(1).

Under Federal Rule of Civil Procedure 12(b), a defendant may assert the following defenses, among others, by motion:  lack of personal jurisdiction; insufficient process; and insufficient service of process.  Fed. R. Civ. P. 12(b)(2), (4), (5).  Here, the Defendants purport to bring their motion to dismiss pursuant to all of these provisions of Rule 12(b). However, these grounds for relief are not interchangeable. "[A] Rule 12(b)(4) motion is a challenge to the form of the process rather than the manner or method of its service, whereas a Rule 12(b)(5) motion challenges the mode of delivery or the lack of delivery of

the summons and complaint." *Coon v. Shea*, No. 2:14-CV-85, 2014 WL 5847720, at *4 (D. Vt. Sept. 5, 2014) (quotation omitted), *report and recommendation adopted in relevant part*, No. 2:14-CV-85, 2014 WL 5849053 (D. Vt. Nov. 12, 2014). "Objections pursuant to Rule 12(b)(2) concern lack of personal jurisdiction, which results when a summons and complaint have not been served on the defendant pursuant to Rule 12(b)(5)." *Jackson v. City of N.Y.*, No. 14-CV-5755 GBD KNF, 2015 WL 4470004, at *4 (S.D.N.Y. June 26, 2015) (quotation omitted); *see also* C. Wright, A. Miller, & M. Kane, 5B Fed. Prac. & Proc. Civ. § 1353 (3d ed.) ("Although the questions of personal jurisdiction and service of process are closely interrelated, service of process is merely the means by which a federal court gives notice to the defendant and asserts jurisdiction over him.").

Here, the only grounds for dismissal identified in Defendants' motion are alleged deficiencies in the summonses served by Plaintiff with the Complaint in the 2017 Action. Accordingly, the Court analyzes Defendants' motion under Rule 12(b)(4). "Objections to sufficiency of process itself under Rule 12(b)(4) must identify substantive deficiencies in the summons, complaint or accompanying documentation." *Hilaturas Miel, S.L. v. Republic of Iraq*, 573 F. Supp. 2d 781, 796 (S.D.N.Y. 2008). Where the identified defects in a summons are merely technical, "the appropriate remedy . . . [is] not to dismiss the claims but to serve an amended summons[.]" *Precision Assocs., Inc. v. Panalpina World Transp. (Holding) Ltd.*, No. 08-CV-42 JG VVP, 2011 WL 7053807, at *45 (E.D.N.Y. Jan. 4, 2011), *report and recommendation adopted*, 2012 WL 3307486 (E.D.N.Y. Aug. 13, 2012).

There is some disagreement regarding the burden of proof with respect to a Rule 12(b)(4) motion. A recent case in this District held that "[t]he burden of proof regarding the insufficiency of process . . . is upon the challenger, here the defendant[.]" *Burmaster v. Pfizer Inc.*, No. 17CV1290V, 2018 WL 5779133, at \*5 (W.D.N.Y. Apr. 23, 2018), *report and recommendation adopted*, 2018 WL 5777032 (W.D.N.Y. Nov. 2, 2018); *see also Rasheed v. D'Antonio*, No. CIV.A. 10-11253-GAO, 2012 WL 1065574, at \*2 (D. Mass. Mar. 12, 2012), *report and recommendation adopted*, 2012 WL 1065572 (D. Mass. Mar. 27, 2012) ("In all challenges to the sufficiency of either the process or the service of process, the burden of proof lies with the challenging party."); *Ortiz v. Reyes*, No. CIV. 05-1721(DRD), 2006 WL 940703, at \*1 (D.P.R. Apr. 10, 2006) ("The party raising the insufficiency of service has . . the absolute burden of specifically establishing to the Court how plaintiff failed to satisfy the requirements of the service provision utilized."). However, cases from other districts suggest that the burden is on the plaintiff. *See, e.g., Coleman v. Bank of N.Y. Mellon*, 969 F. Supp. 2d 736, 744 (N.D. Tex. 2013) ("The plaintiff bears the burden of proof regarding sufficiency of the process."); *Sunoco v. Mid-Atl. Region Retailer Compliance Ctr.*, No. CIV.A. 10-4941 NLH, 2012 WL 2870871, at \*2 (D.N.J. July 12, 2012) ("The plaintiff is responsible for effecting service and has the burden of demonstrating its conformity with the Rules."). In this case, the Court need not decide who bears the burden of proof because it concludes, for the reasons set forth below, that Plaintiff has demonstrated that any defect in the summonses was merely technical and that dismissal of this case is therefore not warranted.

## B.    Any Defects in the Summonses were Merely Technical

The 2017 Defendants argue that the summonses served by Plaintiff were defective because: (1) there is no notation on the docket in this matter that summonses were issued; (2) the summonses do not bear the seal of the Court;  (3) the summons issued to defendant Jason Hughes ("Defendant Hughes") does not bear the index number; and (4) the summonses do not list all the parties, but instead list only the defendant to whom  service is directed.  (2017 Action, Dkt. 6-1 at 6-8).  In opposition, Plaintiff has submitted a sworn affirmation in which she states that: (1) on December 8, 2017, she appeared in person at the Clerk of Court's office and submitted summonses for each of the 2017 Defendants, which were signed and stamped and returned to her; (2) she thereafter mailed two copies of the Complaint and a summons as to each of the 2017 Defendants to a process serving company in Albany, New York, which in turn served each of the 2017 Defendants; (3) upon receiving a copy of the 2017 Defendants' motion to dismiss, she realized that the summons issued to Defendant Hughes did not contain the index number, and that she thereafter "corrected" the summons by adding the case number and caused a copy of the corrected summons and the Complaint to be re-served on Defendant Hughes. (*Id.*, Dkt. 10 at ¶¶ 5-8).

"Any factual question raised by the affidavits or other evidence presented on a Rule 12(b)(4) or a Rule 12(b)(5) motion should be determined by the district court." C. Wright, A. Miller, & M. Kane, 5B Fed. Prac. & Proc. Civ. § 1353 (3d ed.).  Here, the Court credits Plaintiff's sworn allegations that the summonses in question were duly issued by the Clerk of Court's Office, inasmuch as the summonses that were returned executed by Plaintiff

bear the Clerk of Court's signature and are consistent with the form of summonses issued in this District. (*See* 2017 Action, Dkt. 3). There is no evidence in the record that rebuts Plaintiff's sworn statement that the challenged summonses were in fact issued and signed by the Clerk of Court.

The facts that the 2017 Defendants point to in support of their motion do not change this conclusion. First, the lack of a notation on the docket indicating summonses were issued is not dispositive. The procedural history of the 2017 Action is somewhat unusual in that summonses were not issued at the outset, as is normally the case. It was only a month after the 2017 Action was commenced that Plaintiff returned to the Clerk of Court's Office and submitted summonses, which would have been issued by someone other than the case administrator assigned to this matter. The Court has conferred with the Clerk of Court's Office and confirmed that under these circumstances, the most likely explanation is that a miscommunication between the individual who issued the summonses and the case administrator resulted in a failure to note the issuance of summonses on the docket.

The fact that defense counsel claims to have called the Clerk of Court's Office on December 13, 2017, and to have been told that no summonses had been issued (*see id.*, Dkt. 6-2 at ¶ 5) is not probative. The employee of the Clerk of Court's Office with whom defense counsel spoke would not have had any personal knowledge regarding the issuance of summonses and would have been relying on the absence of a docket notation in answering defense counsel's question.

Second, although the 2017 Defendants claim that the summonses with which they were served did not bear the Court's seal, they have not submitted to the Court the actual

summonses, but have instead cited to the scanned versions found on the Court's CM/ECF filing system. (*See id.*, Dkt. 6-2 at ¶ 7). However, when, as in this case, summonses in this District are issued as paper copies, the Clerk of Court's Office uses an embossed court seal that is not visible when the summonses are scanned electronically. Defense counsel does not purport to have any personal knowledge regarding whether the summonses served on his clients were unsealed but relies solely on the scanned versions of the summonses, which are not probative as to this issue. Thus, the record does not establish that the summonses were unsealed, as Defendants claim.

Third, the summonses are not defective because they list only the defendant being served. "Contrary to Defendants' assertion, Rule 4(a) does not require that all named defendants, rather than just the defendant being served, be listed on every summons." *MacGregor v. Milost Glob., Inc.*, No. 17-CV-6691-LTS-KHP, 2018 WL 4007642, at *3 (S.D.N.Y. Aug. 22, 2018) (denying Rule 12(b)(4) motion where the defendants argued that "the summonses issued by Plaintiff were insufficient because they did not name all parties") (quotation omitted). The summonses in this case list Plaintiff's name and the name of the defendant being served, which is sufficient to comply with Rule 4(a).

The sole legitimate defect in the summonses identified by the 2017 Defendants is that the summons issued to Defendant Hughes did not bear the index number. Plaintiff acknowledges this defect but avers that she corrected it upon being notified of the defect by virtue of the 2017 Defendants' motion. (2017 Action, Dkt. 10 at 4-5). Defendants do not dispute that Plaintiff corrected the defect and re-served Defendant Hughes but argue that she was not authorized to do so in advance and that "[u]nder Rule 4(a)(2), amendments

to summonses require court approval." (*Id.*, Dkt. 13 at 4). This argument is the epitome of form over substance. The failure to include the index number on Mr. Hughes' summons is a minor technical defect, and the remedy for technical defects in a summons is service of an amended summons. *Precision Assocs.*, 2011 WL 7053807, at *45. Here, Plaintiff has already corrected the defect and re-served Defendant Hughes. While it would have been better practice for Plaintiff to seek the Court's permission prior to making her correction, Plaintiff is *pro se* and some allowances must be made. *See Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir. 1983) (noting that there is "an obligation on the part of the court to make reasonable allowances to protect *pro se* litigants from inadvertent forfeiture of important rights because of their lack of legal training," which includes avoiding "harsh application of technical rules"). The Court therefore exercises its authority to permit amendment of summons under Rule 4(a)(2) and approves of Plaintiff's amendment and re-service of the summons on Defendant Hughes *nunc pro tunc*.

For all the foregoing reasons, the Court finds that any defects in the summonses in the 2017 Action were minor technical defects that have been remedied, and concludes that dismissal of Plaintiff's Complaint in the 2017 Action is not warranted under any of Rules 12(b)(2), (4), or (5). As such, the 2017 Defendants' motion to dismiss is denied.

## III.   Motion to Dismiss the 2018 Action and Cross-Motion to Compel

The 2018 Defendants have also moved for dismissal of Plaintiff's claims against them, arguing that (1) Plaintiff's claims are barred by sovereign immunity, (2) Plaintiff's claims are barred by the doctrines of collateral estoppel and res judicata, and because she has engaged in duplicative litigation and improper claim splitting, and (3) Plaintiff's claims

are time barred. (2018 Action, Dkt. 2-1 at 1-2). Plaintiff opposes the 2018 Defendants' motion and has filed a cross-motion requesting that the Court "compel Defendants to answer the charges in [the] Complaint[.]" (*Id.*, Dkt. 10 at 1). For the reasons discussed below, the Court agrees that Plaintiff's claims against the 2018 Defendants are barred by sovereign immunity, and therefore grants the 2018 Defendants' motion and denies Plaintiff's cross-motion.

### A.   Legal Standard

It is an open question in this Circuit whether a motion to dismiss made on the ground of sovereign immunity should be reviewed under Federal Rule of Civil Procedure 12(b)(1) or 12(b)(6). *See Moore v. Samuel S. Stratton Veterans Administration Hospital*, No. 1:16-CV-475LEKCFH, 2019 WL 251725, at *2 (N.D.N.Y. Jan. 17, 2019). "This distinction is significant, because while a district court must accept all factual allegations in a complaint as true when adjudicating a motion to dismiss under Fed. R. Civ. P. 12(b)(6), . . . in adjudicating a motion to dismiss for lack of subject-matter jurisdiction pursuant to Rule 12(b)(1), a district court may resolve disputed factual issues by reference to evidence outside the pleadings, including affidavits." *Id.* (quotations and alterations omitted). In light of the unresolved nature of the standard, "the Court will follow the lead of several other district courts within this Circuit and apply the Rule 12(b)(6) standard in analyzing defendants' sovereign immunity arguments." *Nolan v. Cuomo*, No. 11-CV-5827 DRH AKT, 2013 WL 168674, at *6 (E.D.N.Y. Jan. 16, 2013).

"In considering a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), a district court may consider the facts alleged in the complaint, documents

attached to the complaint as exhibits, and documents incorporated by reference in the complaint." *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010). A court should consider the motion by "accepting all factual allegations as true and drawing all reasonable inferences in favor of the plaintiff." *Trs. of Upstate N.Y. Eng'rs Pension Fund v. Ivy Asset Mgmt.*, 843 F.3d 561, 566 (2d Cir. 2016), *cert. denied*, 137 S. Ct. 2279 (2017). To withstand dismissal, a claimant must set forth "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Turkmen v. Ashcroft*, 589 F.3d 542, 546 (2d Cir. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (internal quotations and citations omitted). "To state a plausible claim, the complaint's '[f]actual allegations must be enough to raise a right to relief above the speculative level.'" *Nielsen v. AECOM Tech. Corp.*, 762 F.3d 214, 218 (2d Cir. 2014) (quoting *Twombly*, 550 U.S. at 555).

**B.** **Plaintiff's Claims Against the 2018 Defendants are Barred by Sovereign Immunity**

All of the 2018 Defendants are New York State agencies. "Absent a waiver on the part of the state, or a valid congressional override, the eleventh amendment prohibits federal courts from entertaining suits by private parties against the states." *Farid v. Smith*, 850 F.2d 917, 920–21 (2d Cir.1988) (citing *Kentucky v. Graham*, 473 U.S. 159, 167 n. 14 (1985)). "State sovereign immunity not only extends to the state itself, but to state agencies that constitute 'arms of the State.'" *Barry v. City Univ. of N.Y.*, 700 F. Supp. 2d 447, 452 (S.D.N.Y. 2010) (quoting *N. Ins. Co. of N.Y. v. Chatham County, Ga.*, 547 U.S. 189, 193 (2006)). In assessing whether sovereign immunity applies, the Court's "inquiry must go beyond the label plaintiff attaches to [her] claims and focus on the substance of the claim which [she] asserts." *Mill Creek Grp., Inc. v. F.D.I.C.*, 136 F. Supp. 2d 36, 43 (D. Conn. 2001) (quotation omitted); *see also Marchese v. United States*, 781 F. Supp. 241, 248 n.1 (S.D.N.Y. 1991) (noting that it is "the substance of plaintiffs' claim, regardless of how it is framed," that governs the sovereign immunity inquiry).

Plaintiff's Complaint in the 2018 Action is far from a model of clarity. However, read liberally, it alleges that: (1) the NYSP violated the New York Civil Service Law in connection with an administrative hearing held in June and July of 2015 by refusing to consider certain of Plaintiff's claims (2018 Action, Dkt. 1 at ¶ 8); (2) the NYAG failed to investigate "the crimes and civil rights violations Plaintiff reported" to the NYAG's office (*id.* at ¶ 9); (3) the NYAG and her employees engaged in litigation misconduct in a proceeding in New York State Supreme Court, Erie County (*id.* at ¶¶ 10-19); and (4) the

PERB and the GOEC refused to properly consider grievances submitted by Plaintiff (*id.* at ¶¶ 20-25). Based on these substantive allegations, Plaintiff seeks to assert claims under 42 U.S.C. § 1983 for violation of her constitutional rights, discrimination and retaliation claims under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.* ("Title VII"), discrimination and retaliation claims under the New York State Human Rights Law, Executive Law §§ 290 *et seq.* (the "NYSHRL"), conspiracy claims under 42 U.S.C. §§ 1985(3) and 1986, and violations of the New York Civil Service Law. (*Id.* at ¶¶ 26-45).

As a threshold matter, while Plaintiff has labeled some of her claims as arising under Title VII, it is clear when looking at the substance of the allegations that Plaintiff has not raised a viable Title VII claim.[4] First, "Title VII imposes liability for employment discrimination only on an employer[.]" *Arculeo v. On-Site Sales & Mktg., LLC*, 425 F.3d 193, 197 (2d Cir. 2005) (quotation omitted). Here, there is no allegation that Plaintiff was ever employed by the NYAG, the PERB, or the GOEC, and she therefore has not and cannot assert a valid Title VII claim as to any of these defendants. Second, none of the allegations in the 2018 Action relate to discrimination based on a protected characteristic or to retaliation by the NYSP. To the contrary, the factual allegations in the 2018 Action regarding the NYSP are limited to an assertion that it mishandled Plaintiff's administrative hearing in violation of the New York Civil Service Law. (*See* 2018 Action, Dkt. 1 at ¶ 8).

---

[4]    "It is well established that Congress has abrogated the states' sovereign immunity for claims under Title VII," *Green v. Niagara Frontier Transportation Auth.*, 340 F. Supp. 3d 270, 273 (W.D.N.Y. 2018) (quotation omitted), which is why the Court has considered the viability of Plaintiff's Title VII claim.

Under these circumstances, Plaintiff's mere citation to Title VII does not prevent a finding that her claims are barred by sovereign immunity.

Moreover, to the extent that Plaintiff is trying to assert a Title VII claim against the NYSP in the 2018 Action, the Court agrees with the 2018 Defendants that such a claim is improperly duplicative of the 2017 Action and the NDNY Action. The Complaint in the 2017 Action covers the time frame of the administrative hearing in June and July of 2015 and in fact expressly mentions that hearing in the allegations therein. (2017 Action, Dkt. 1 at ¶¶ 44-46). Similarly, the Second Amended Complaint in the NDNY Action, which is the operative pleading, explicitly alleges misconduct during the administrative hearing in June and July of 2015. NDNY Action, Dkt. 37 at ¶¶ 114-117. "As part of its general power to administer its docket, a district court may stay or dismiss a suit that is duplicative of another federal court suit." *Curtis v. Citibank, N.A.*, 226 F.3d 133, 138 (2d Cir. 2000). Accordingly, even had Plaintiff properly alleged a Title VII claim in the 2018 Action, it would be subject to dismissal as improperly duplicative.

None of the other claims Plaintiff asserts in the 2018 Action may proceed against agencies of New York State. "It is well established that New York State has not waived its sovereign immunity from Section 1983 claims," *Harrison v. New York*, 95 F. Supp. 3d 293, 314 (E.D.N.Y. 2015) (quotation omitted), and Congress did not override that immunity by enacting § 1983, *see Will v. Mich. Dep't of State Police*, 491 U.S. 58, 66 (1989); *see also Goonewardena v. N.Y.*, 475 F. Supp. 2d 310, 329 (S.D.N.Y. 2007) ("The State of New York has not waived its sovereign immunity in regard to section 1983 actions

nor has its sovereign immunity been abrogated."). Plaintiff therefore cannot pursue her § 1983 claims against the 2018 Defendants.

New York State and its agencies also have sovereign immunity against claims brought under 42 U.S.C. §§ 1985 and 1986. *See, e.g., Murawski v. New York State Bd. of Elections*, 285 F. Supp. 3d 691, 696 (S.D.N.Y. 2018) ("New York has not waived its immunity or consented to being sued under the Constitution or 42 U.S.C. §§ 1985 or 1986[.]"); *Qader v. Cohen & Slamowitz*, No. 10 CV 01664 GBD, 2011 WL 102752, at *3 (S.D.N.Y. Jan. 10, 2011) ("Plaintiff has not identified a statute wherein Congress abrogates the traditional sovereign immunity of states with respect to suits brought under 42 U.S.C. § 1983, 42 U.S.C. § 1985, or 42 U.S.C. § 1986. Plaintiff has also not identified a statute wherein the state of New York expressly waives its immunity from suits under any of the aforementioned statutes.").

Turning to Plaintiff's state law claims, "it is well settled that the Eleventh Amendment bars the adjudication of pendent state law claims against nonconsenting state defendants in federal court. . . . Moreover, district courts in the Second Circuit [have] consistently found that the NYSHRL does not include a waiver of the State's sovereign immunity to suit in federal court." *Winokur v. Office of Court Admin.*, 190 F. Supp. 2d 444, 451 (E.D.N.Y. 2002). Accordingly, sovereign immunity prevents the Court from considering any of Plaintiff's state law claims.[5]

---

[5]    Plaintiff's claims are not saved by the fact that she seeks injunctive relief. The Eleventh Amendment "applies to injunctive relief as well as claims for damages in suits against the states." *Harris v. N.Y. State Educ. Dep't*, 419 F. Supp. 2d 530, 533 (S.D.N.Y. 2006) (citing *Luder v. Endicott*, 253 F.3d 1020, 1024–25 (7th Cir. 2001)); *see also Hover*

For the foregoing reasons, the Court finds that Plaintiff's claims against the 2018 Defendants are barred by sovereign immunity and grants the 2018 Defendants' motion to dismiss on this basis. The Court denies Plaintiff's cross-motion to compel Defendants to answer the Complaint for the same reasons.

## IV.    **Motions for a More Definite Statement**

The 2017 Defendants and the 2018 Defendants have both requested that the Court order Plaintiff to provide a more definite statement pursuant to Federal Rule of Civil Procedure 12(c).  (2017 Action, Dkt. 6; 2018 Action, Dkt. 2).  In light of the Court having granted the 2018 Defendants' motion to dismiss for the reasons set forth above, their motion for a more definite statement is denied as moot.  The 2017 Defendants' motion for a more definite statement is granted, for the reasons set forth below.

Federal Rule of Civil Procedure 12(e) permits a party to "move for a more definite statement of a pleading to which a responsive pleading is allowed but which is so vague or ambiguous that the party cannot reasonably prepare a response[.]"  Fed. R. Civ. P. 12(e). Rule 12(e) is a "remedy for an allegation lacking sufficient specificity to provide adequate notice[.]"  *Croons v. N.Y. State Office of Mental Health*, 18 F. Supp. 3d 193, 199 (N.D.N.Y. 2014) (quotation omitted).  A Rule 12(e) motion is particularly appropriate in cases involving "shotgun pleadings" where an asserted cause of action "incorporates all of the factual allegations preceding it," rendering it "virtually impossible to know which

---

*v. N.Y. State Office for People With Developmental Disabilities*, No. 3:17-CV-895, 2018 WL 3025038, at *2 (N.D.N.Y. June 18, 2018) (the exception to sovereign immunity recognized in *Ex parte Young*, 209 U.S. 123 (1908), is limited to claims against state officials and does not apply to claims asserted directly against the state and its agencies).

allegations of fact are intended to support which claim(s) for relief." *Id.* (quotation omitted); *see also In re Methyl Tertiary Butyl Ether ("MTBE") Prod. Liab. Litig.*, No. 1:00-1898, 2008 WL 2676278, at *2 (S.D.N.Y. July 8, 2008) ("Rule 12(e) can be an appropriate vehicle to pare down 'shotgun' pleadings[.]") (quotation omitted). The grant or denial of a Rule 12(e) motion is "within the discretion of the district court." *Vaden v. Lantz*, 459 F. Supp. 2d 149, 151 (D. Conn. 2006) (quotation omitted).

Here, the Court agrees with the 2017 Defendants that Plaintiff's Complaint constitutes a shotgun pleading. Plaintiff's Complaint consists of voluminous factual allegations followed by a list of 20 causes of action, none of which are tied to any of the preceding facts. (*See* 2017 Action, Dkt. 1 at ¶¶ 59-79). Accordingly, Plaintiff is ordered to provide a more definite statement in which she sets forth the particular facts that support each of her claims within 14 days of entry of this Decision and Order. **Plaintiff is warned that failure to comply with this direction may result in her Complaint being stricken**. *See* Fed. R. Civ. P. 12(e) ("If the court orders a more definite statement and the order is not obeyed within 14 days after notice of the order or within the time the court sets, the court may strike the pleading or issue any other appropriate order.").

## V.    Motions to Transfer to the Northern District of New York

Plaintiff has asked the Court to transfer both the 2017 and 2018 Actions to the Northern District of New York. (2017 Action, Dkt. 16; 2018 Action, Dkt. 13). Because the Court has found that the 2018 Action must be dismissed, Plaintiff's request to transfer that matter is denied as moot. Plaintiff's request to transfer the 2017 Action is granted, for the reasons set forth below.

## A.    Legal Standard

The Court construes Plaintiff's request for transfer to the Northern District as a motion under 28 U.S.C. § 1404(a), which provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." *Id.* Section 1404(a) is "a codification of the doctrine of *forum non conveniens*" and "governs the subset of cases in which the [proposed] transferee forum is within the federal system[.]" *Martinez v. Bloomberg LP*, 740 F.3d 211, 221 (2d Cir. 2014) (quotations omitted). "The determination of whether an action should be transferred pursuant to § 1404(a) depends upon a balancing of many different factors. These factors include not only convenience to the parties and witnesses but also the relative ease of access to proof, availability of witnesses . . . and all other practical problems which make trial of a case easy, expeditious, and inexpensive." *Heyco, Inc. v. Heyman*, 636 F. Supp. 1545, 1548 (S.D.N.Y. 1986). "The party seeking the transfer bears the burden of establishing that the transfer is warranted[.]" *Id.*

## B.    Transfer to the Northern District of New York is Warranted

Here, the relevant factors clearly support transfer of the 2017 Action to the Northern District of New York. As a threshold matter, the Court finds that the matter could have properly been brought in the Northern District of New York in the first instance. Pursuant to 28 U.S.C. § 1391(b), a civil action may be commenced in "a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located." *Id.* For venue purposes, state officials are considered residents of the district in

which they performed their duties. *See Berry v. N.Y. State Dep't of Corr. Servs.*, 808 F. Supp. 1106, 1109 (S.D.N.Y. 1992). The individual defendants in the 2017 Action are all high-level employees of the NYSP's Division of Human Resources, Internal Affairs Bureau, and Office of Legal Counsel, and performed their services in Albany, which is within the Northern District of New York. Moreover, the NYSP's headquarters is in Albany.

For these same reasons, the Northern District of New York is a more convenient forum for the 2017 Defendants, and it is likely that the relevant witnesses and proof would be found in the Northern District. Moreover, the Court agrees with Plaintiff that it would serve the interests of justice to have her multiple lawsuits handled in the same court, to avoid unnecessary duplication of effort and waste of judicial resources. Accordingly, the relevant factors all favor a transfer of the 2017 Action to the Northern District of New York. The Court therefore grants Plaintiff's motion for transfer with respect to the 2017 Action.

## VI. <u>Motion for a Conference</u>

Finally, Plaintiff has moved for a conference in the 2018 Action. (2018 Action, Dkt. 12). This motion is denied as moot in light of the Court's determination that the 2018 Action must be dismissed.

## CONCLUSION

For the foregoing reasons, the pending motions in the 2017 Action (Civil Action No. 1:17-cv-01157) are resolved as follows: (1) Plaintiff's motion for costs (*id.*, Dkt. 2) is denied; (2) the 2017 Defendants' motion to dismiss and for a more definite statement (*id.*, Dkt. 6) is denied to the extent it seeks dismissal and granted to the extent it seeks a more definite statement; and (3) Plaintiff's motion for transfer (*id.*, Dkt. 16) is granted with respect to Civil Action No. 1:17-cv-01157 only. Plaintiff must file a more definite statement as discussed above **within 14 days of entry of this Decision and Order**. Plaintiff is warned that failure to file a more definite statement as ordered by the Court may result in her Complaint being stricken. The Clerk of Court is directed to transfer Civil Action No. 1:17-cv-01157 to the United States District Court for the Northern District of New York pursuant to 28 U.S.C. § 1404(a). **Plaintiff should file her more definite statement in the Northern District of New York if it is filed after transfer is effectuated**.

The pending motions in the 2018 Action (Civil Action No. 1:18-cv-00732) are resolved as follows: (1) the 2018 Defendants' motion to dismiss and for a more definite statement (*id.*, Dkt. 6) is granted to the extent it seeks dismissal and denied as moot to the extent it seeks a more definite statement; (2) Plaintiff's cross-motion to compel (*id.*, Dkt. 10) is denied; (3) Plaintiff's letter motion for a conference (*id.*, Dkt. 12) is denied as moot; and (4) Plaintiff's motion for transfer of Civil Action No. 1:18-cv-00732 to the Northern District of New York (*id.*, Dkt. 13) is denied as moot. The Clerk of Court is directed to close Civil Action No. 1:18-cv-00732.

SO ORDERED.

ELIZABETH A. WOLFORD
United States District Judge

Dated: February 5, 2019
        Rochester, New York